IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

DONALD EUGENE LANE )
)
v. ) No. 2:05-0072
) Judge Nixon/Bryant
JO ANNE B. BARNHART, Commissioner )
of Social Security )

To: The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"), as amended. This case was transferred to the docket of the undersigned by order entered August 31, 2006 (Docket Entry No. 21). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 13), to which defendant has responded (Docket Entry No. 19). Plaintiff has further filed a reply to plaintiff's response (Docket Entry No. 20). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion for reversal of the Commissioner's decision and an award of benefits be DENIED, but that the cause be REMANDED on the Court's own motion for further administrative proceedings as

1

described herein, pursuant to the sixth sentence of 42 U.S.C. § 405(g).

## I. Introduction

Plaintiff filed his DIB and SSI applications on July 6, 2001, alleging disability since August 31, 2000 (Transcript of Administrative Record ("Tr.") 51-53, 322-24) due to herniated disc, depression, nerves, and high blood pressure (Tr. 61). Following denials at the initial and reconsideration stages of agency review (Tr. 34-38, 40-41), plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on August 25, 2003 (Tr. 337-367). Plaintiff was represented by counsel at the hearing and gave testimony, as did an impartial vocational expert ("VE"). The ALJ took the case under advisement until March 3, 2004, when he issued a decision finding plaintiff not disabled (Tr. 15-21). The ALJ made the following findings:

1.  The claimant met the disability insured status requirements of the Act on August 31, 2000, his alleged disability onset date, and continued to meet them through December 31, 2000.

2.  The claimant has not engaged in substantial gainful activity since August 31, 2000.

3.  The claimant's "severe" impairments are disc dessication and bulges at L4-5 and L5-S1, a depressive disorder (not otherwise specified), and alcohol abuse, but he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.  As discussed above, the claimant's testimony could not

be found credible to the extent alleged.

5. The claimant can perform the residual functional capacity described above [a limited range of light work]. 20 CFR §§ 404.1545 and 416.945.

6. The claimant cannot perform his past relevant work as a carpenter, a hand packer, an off bearer/stacker, a press operator, a sander, and a sprinkler assembler. 20 CFR §§ 404.1565 and 416.965.

7. With a GED education, the claimant was 46 years old, which is defined as a younger individual, on his alleged disability onset date, and he is 50 years old, which is defined as approaching advanced age, as of the date of this decision. 20 CFR §§ 404.1563, 416.963, 404.1564, and 416.964.

8. The claimant does not have any acquired skills that are transferable to other work. 20 CFR §§ 404.1568 and 416.968.

9. Given his residual functional capacity and vocational factors and using Rules 202.21 and 202.14 as a framework for decisionmaking, a significant number of jobs that the claimant can perform exists in the regional or national economy. Examples and number of such jobs are given above. Table 2 of Appendix 2 to Subpart P of Regulations No. 4; 20 CFR §§ 404.1569 and 416.969.

10. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. 20 CFR §§ 404.1520(f) and 416.920(f).

(Tr. 21).

On May 20, 2005, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 5-7), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's

findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive.  Id.

## II.  Discussion[1]

Among the errors alleged by plaintiff is the ALJ's failure to find him presumptively disabled pursuant to § 4.12(A) of the Listing of Impairments, describing peripheral arterial disease.  As sole support for this argument, plaintiff cites the medical evidence submitted by Dr. Brian Gerndt, a vascular surgeon who diagnosed "significant peripheral vascular disease" with pain, numbness, and claudication[2] after walking a very short distance, and requiring femoral bypass grafting surgery rather than angioplasty and placement of a stent (Tr. 286-88).  The government in response defends the ALJ's finding of no listing-level impairment (Tr. 16, 20), arguing that the findings of Dr. Gerndt fall short of satisfying all the criteria of § 4.12(A) (though in fact the criteria addressed by the government are those of § 4.12(B), as noted by plaintiff in his reply brief).  Regardless, it is for the ALJ to consider plaintiff's satisfaction of relevant listings in light of the medical evidence before him.  Though neither party addresses this

---

[1] In view of the issues discussed below and the recommendation of the undersigned, a comprehensive review of the record is not undertaken in this report.

[2] Limping or lameness.  Dorland's Illustrated Medical Dictionary 338 (28th ed. 1994).

4

issue, the record reveals that the ALJ did not review the evidence submitted by Dr. Gerndt, and so did not consider the possibility of plaintiff's disability pursuant to § 4.12(A). Remand is therefore appropriate in this case, as further detailed below.

Nowhere in his narrative opinion does the ALJ mention plaintiff's January 2004 consultation with Dr. Gerndt, nor does he mention the record or results of any of the studies and procedures ordered by that physician, including: carotid ultrasound, doppler arterial study of both lower extremities, aortogram with runoff, CT scan of the abdomen/abdominal angiography, nuclear stress test, peripheral vascular study, and associated laboratory work, all done in January 2004 (Tr. 286-318, 321). However, this failure is not without some degree of justification. At the conclusion of plaintiff's hearing on August 25, 2003, the ALJ stated that the record would be left open for 30 days "to receive Dr. Weiss's notes, the depositions of Drs. Talmadge and Weiss and, hopefully, an MRI which may or may not be paid for by Workmans' Compensation." (Tr. 366). Consistent with the deadline imposed by the ALJ, the Office of Hearings and Appeals received additional evidence from plaintiff's counsel on September 12, 2003 (Tr. 248-252), which was admitted into evidence on September 17, 2003 (Tr. 367). In correspondence which apparently accompanied this submission of

5

evidence, dated September 10, 2003, counsel advised the ALJ that "[t]his will be all of the remaining evidence of Mr. Lane." (Tr. 280). The record was thus closed on September 17, 2003. (Id.).[3]

Without any official reopening of the record, the results of an MRI dated September 5, 2003, were received from plaintiff's counsel via facsimile on October 29, 2003 (Tr. 279-281), and via regular mail on October 30, 2003 (Tr. 282-84), and were subsequently admitted into evidence and duly considered (Tr. 19).

On March 3, 2004, the ALJ issued his decision (Tr. 15-21). *Just twelve days prior*, on February 20, 2004, the records of Dr. Gerndt were received (Tr. 285). Thus, while those records were included in evidence as Exhibit 25F (Tr. 4) prior to the ALJ's ruling, his failure to account for this exhibit--amidst all the other exhibits which were included in the compilation on or before October 30, 2003--is understandable.

Moreover, when the Appeals Council ("AC") declines to review the case and leaves the ALJ's decision intact, evidence submitted after the conclusion of proceedings before the ALJ is excluded from the district court's review for substantial evidence and legal error. Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 553-54 (6th Cir. 1984). Thus, judicial

---

[3]Also, at some indeterminate point following the hearing, the deposition transcripts anticipated by the ALJ were admitted into evidence (Tr. 253-275).

6

review is confined to "evidence that was available to the [Commissioner,]" Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 685 (6th Cir. 1992); evidence first presented to the AC, or first presented on appeal to the district court, was clearly not available to the ALJ whose decision stands as the final decision of the Commissioner. Accordingly, a claimant's only remedy in seeking to have such evidence considered is to request remand (without reversal) under the sixth sentence of 42 U.S.C. § 405(g), so that such late-filed evidence as is "new" and "material" may for good cause shown be considered in the first instance by the Commissioner.

In this case, however, the evidence in question was technically "available to" the ALJ and was not proffered to the AC as a new, independent exhibit to plaintiff's administrative appeal. It appears that counsel presumed this evidence to already be fair game in the hunt for benefits before the AC and this Court, perhaps in view of the ALJ's consideration of other proof that was admitted after the record made at the hearing was closed.

A similar situation was confronted by the district court in Shaw v. Comm'r of Soc. Sec., 98 Soc.Sec.Rep.Serv. 499, 2004 WL 1765475 (E.D. Mich. July 14, 2004). There, the court considered plaintiff Shaw's argument "that the [ALJ] failed to consider additional evidence that the plaintiff submitted, she

says, before the ALJ issued his decision (although it was submitted beyond the thirty-day period following the hearing allowed by the ALJ before he closed the record), and therefore she suffered a deprivation of due process." Id. at *1. The medical evidence that Shaw relied upon was submitted to the ALJ eight days prior to the date of his decision. Unlike plaintiff in the case at bar, however, Shaw appealed the ALJ's failure to consider the recent exhibit to the AC, and also made the recent medical evidence an exhibit to her administrative appeal. In light of this submission to the AC, and likely based on Shaw's presentation of the issue as a deprivation of due process, the Court observed that "it is not seriously contested that the plaintiff's new exhibit cannot be considered in determining whether substantial evidence in the record exists." Id. at *4. Rather, the Shaw court construed the plaintiff's motion for reversal and an award of benefits as a motion to remand for consideration of new and material evidence under sentence six of 42 U.S.C. § 405(g), in keeping with Sixth Circuit authority identifying such a remand as the only remedy available when new evidence is submitted in the first instance to the AC. Id. (quoting, e.g., Cline v. Comm'r of Soc. Sec., 96 F.3d 146 (6th Cir. 1996)).

In the instant case, the undersigned--like the court in Shaw--is reluctant to consider the eleventh hour submission of

8

materials from Dr. Gerndt in the substantial evidence, reversible error analysis. Nonetheless, this evidence cannot be ignored. While the government in its brief addresses the weight of this evidence vis-à-vis Listing 4.12, the argument rings hollow as a post hoc substitute for the necessary administrative attention to the matter. Accordingly, though this case differs from Shaw in certain particulars, the undersigned would recommend that it too be considered for remand under the sixth sentence of § 405(g).

The sixth sentence of § 405(g) states that the Court "may *at any time* order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" (Emphasis added). As noted by the Sixth Circuit in Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), for purposes of a sentence six remand,

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Such evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.

Id. at 357 (internal citations omitted).

The evidence from Dr. Gerndt, dated as recently as January 28, 2004, is clearly "new," as it was not in existence at

9

the time of plaintiff's administrative hearing, nor was it reasonably available for submission to the ALJ at any time more convenient to his consideration than the date it was received, February 20, 2004. The evidence is also clearly material, as it relates to plaintiff's condition prior to his August 2003 hearing,[4] and there exists a reasonable probability that the ALJ would have determined plaintiff's SSI claim differently if the "severe inflow disease" had been considered as a severe impairment; if the resulting "very short distance claudication," lack of palpable right femoral or pedal pulse, and documented complaints of pain/numbness (Tr. 287) had been considered against the criteria of listing 4.12, or in support of plaintiff's previously discredited complaints of right knee/foot problems; and if any difficulty with ambulation had been considered in determining plaintiff's residual functional capacity and his ability to perform work which exists in the national economy.

Finally, good cause exists for plaintiff's failure to present this evidence in a timely fashion, as it appears that his referral to the specialist and Dr. Gerndt's diagnosis of peripheral vascular disease were only lately given in response to plaintiff's worsening symptoms and increasing problems with

---

[4]Plaintiff testified at the hearing that his right leg goes numb when he tries to walk, so numb that he cannot tell whether or not he has a shoe on his right foot; that the symptoms in that leg began about six months before the hearing; that the numbness has progressed to where it interferes with his ability to walk; and, that the pain in that leg progresses when he tries to keep using the leg after it becomes numb. (Tr. 352-53).

10

ambulation.[5]

Accordingly, the undersigned must conclude that a sentence six remand is appropriate in this case, so that the ALJ may consider the evidence that escaped his review during the prior proceedings, take such additional evidence as he deems necessary, and further proceed as required by § 405(g).[6]

### III. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for reversal of the Commissioner's decision and an award of benefits be DENIED, but

---

[5]As of February 2003, Dr. Hazlewood noted plaintiff's complaint of some burning pain in his legs, but described plaintiff's gait and lower extremity functioning as essentially normal (Tr. 203). However, as of July 2003, Dr. Talmage took note of plaintiff's complaint of leg numbness "[w]hen he walks or does lifting," and further noted that "[t]he numbness onset during walking suggests the possibility of neurogenic claudication from spinal stenosis." (Tr. 209). Upon examining plaintiff, Dr. Talmage noted that "[h]is posterior tibial and dorsalis pedis pulses in the feet were slightly reduced but not enough to suspect major peripheral arterial insufficiency to account for his claudication." (Tr. 210). Thus, at that time, it was presumed that plaintiff's leg pain was radiating from his back, and that his claudication was the result of spinal compression. It was not until January 2004 that the claudication had been shown to be related to vascular insufficiency.

[6]The statute provides as follows in detailing the Commissioner's obligations after a sentence six remand:

> [T]he Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

11

that the cause be REMANDED on the Court's own motion for further administrative proceedings as described herein, pursuant to the sixth sentence of 42 U.S.C. § 405(g).

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 31st day of January, 2007.

                                                s/ John S. Bryant
                                                JOHN S. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE